# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RONNIE K., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV324 |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Ronnie K., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 8 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief); Docket

---

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Entry 13 (Plaintiff's Reply)).  For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 240-53), alleging a disability onset date of July 17, 2013 (see Tr. 240, 247).  Upon denial of those applications initially (Tr. 95-124, 153-61) and on reconsideration (Tr. 125-52, 171-78), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 179-80). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 43-76.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 9-42.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 233-39), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2018.

2.    [Plaintiff] has not engaged in substantial gainful activity since July 17, 2013, the alleged onset date.

. . .

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

2

3.  [Plaintiff] has the following severe impairments: Degenerative Joint Disease/Osteoarthritis; Gout; Chronic Pain Syndrome; Bipolar Disorder; Depressive and Anxiety Disorders.

. . .

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.  . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except: [Plaintiff] can occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds; [h]e can sit for six hours out of eight-hour day, and stand and/or walk for six hours out of an eight-hour day; [h]e can push and pull as much as he can lift and carry; [h]e can frequently operate hand controls with the left upper extremity; [h]e can perform frequent overhead reaching with the left upper extremity; [h]e can perform frequent handling, fingering and feeling with the left upper extremity; [h]e can frequently climb ramps and stairs, frequently climb ladders, ropes or scaffolds, and frequently stoop; [h]e can occasionally kneel, crouch and crawl; [h]e can frequent [sic] be exposed to unprotected heights, and frequently be exposed to moving mechanical parts; [h]e can frequently operate a motor vehicle, and can be exposed to frequent vibration; [h]is ability to understand, remember and carry out instructions can be accommodated by the performance of simple, routine and repetitive tasks; [h]e is able to perform simple work-related decisions in the exercise of his judgment; [h]e can frequently interact and respond appropriately with supervisors, and occasionally interact and respond appropriately with coworkers and the public at large; [h]e is able to make simple work-related decisions in dealing with changes in the work setting; [h]is time off task can be accommodated by the performance of simple, routine and repetitive tasks.

. . .

6.  [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from July 17, 2013, through the date of this decision.

(Tr. 14-36 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

4

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

5

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

_____

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four

_____

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred in crafting the social impairment aspects of [Plaintiff]'s RFC such that the decision is insufficiently clear to permit judicial review and therefore unsupported by substantial

---

impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

evidence" (Docket Entry 8 at 7 (bold font and block formatting omitted); see also Docket Entry 13 at 1-6); and

   2) "[t]he ALJ erred by failing to resolve the conflict created by finding [state agency psychological consultant] Dr. [Lori] Souther's opinion 'persuasive' but failing to adopt, or explain the basis for not adopting, her opinion that [Plaintiff] would be limited to 'understanding and remembering very short and simple instructions'" (Docket Entry 8 at 12-13 (bold font and block formatting omitted); see also Docket Entry 13 at 6-8).

   Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 12 at 3-20.)

## 1. Interaction Limitations

   In Plaintiff's first issue on review, he maintains that "[t]he ALJ erred in crafting the social impairment aspects of [Plaintiff]'s RFC such that the decision is insufficiently clear to permit judicial review and therefore unsupported by substantial evidence." (Docket Entry 8 at 7 (bold font and block formatting omitted); see also Docket Entry 13 at 1-6.) More specifically, Plaintiff contends that "[t]he ALJ's assessment of [Plaintiff]'s social interaction limitations errs on two fronts[:] . . . [f]irst, the ALJ's RFC limitation to 'frequently interact and respond appropriately with supervisors, and occasionally interact and respond appropriately with coworkers and the public at large' . . . appears to be work preclusive" (Docket Entry 8 at 10

(quoting Tr. 19)), because "that appears to mean that occasionally (i.e., up to one-third of the time) the individual would be unable to respond appropriately to supervisors," and "that frequently (i.e., from one-to-two-thirds of the time) the individual would be unable to respond appropriately to coworkers and the public" (id. at 11). Second, "the RFC's social restriction only limits the temporal aspects of [Plaintiff]'s ability to interact with supervisors, co-workers, and the public," and "does nothing to address the qualitative nature of social interactions [Plaintiff] could perform, and therefore appears to contradict *Mascio[ v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)]." (Id. at 12 (citing Tr. 18-19).) For the reasons explained in more detail below, Plaintiff's contentions lack merit.

**a. Meaning of "Respond Appropriately"**

As a threshold matter, despite Plaintiff's argument in this Court that the ALJ's RFC findings that Plaintiff could "'interact and respond appropriately'" frequently with supervisors and occasionally with co-workers and the public "appears to mean" that the ALJ also found that Plaintiff would respond "inappropriately" to supervisors up to one-third of a work day and to coworkers and the public up to two-thirds of a work day (Docket Entry 8 at 11 (quoting Tr. 19)), he failed to ask the VE the critical question if she interpreted the ALJ's interaction limitations in such a manner, despite cross-examining the VE on other subjects (see Tr. 75). In

fact, the record reflects that the VE did <u>not</u> interpret the ALJ's interaction limitations in such a work-preclusive way, as she cited three jobs available in significant numbers in the national economy that accommodated the ALJ's interaction limitations. (<u>See</u> Tr. 72 (citing <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>"), No. 361.685-018 ("Laundry Worker II"), 1991 WL 672987 (G.P.O. 4th ed. rev. 1991), <u>DOT</u>, No. 381.687-034 ("Waxer, Floor"), 1991 WL 673262, and <u>DOT</u>, No. 319.677-014 ("Food-Service Worker, Hospital"), 1991 WL 672771).)[7]

As a result, Plaintiff has forfeited any challenge in this Court to the ALJ's interaction limitations on grounds of "insufficient[] cl[arity]" (Docket Entry 8 at 10). <u>See</u> <u>Coyier v. Saul</u>, Civ. No. 20-1899, 2021 WL 2173425, at *2 (7th Cir. May 27, 2021) (unpublished) (holding that the plaintiff "waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates"); <u>Coleman v. Colvin</u>, Civ. No. 0:14-2697, 2015 WL 5474674, at *19 (D.S.C. Sept. 16, 2015) (unpublished) ("[T]he court is unpersuaded by [the

---

[7] Two of the three jobs cited by the VE (and adopted by the ALJ at step five of the SEP (<u>see</u> Tr. 35)) contain <u>DOT</u> codes with a fifth digit of "8," (<u>see</u> Tr. 72 (citing <u>DOT</u>, No. 361.6**8**5-018 ("Laundry Worker II"), 1991 WL 672987; <u>DOT</u>, No. 381.6**8**7-034 ("Waxer, Floor"), 1991 WL 673262)), representing the lowest level of human interaction in the labor market, <u>see</u> <u>Fletcher v. Colvin</u>, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, Jr., C.J.). Although the remaining job, Food Service Worker, does not contain a fifth digit of "8," <u>see</u> <u>DOT</u>, No. 319.6**7**7-014 ("Food-Service Worker, Hospital"), 1991 WL 672771, the VE testified that 50,000 Laundry Worker jobs and 70,000 Floor Waxer jobs existed in the national economy (<u>see</u> Tr. 72), which constitute significant job numbers under Fourth Circuit precedent, <u>see</u> <u>McCall v. Saul</u>, 844 Fed. Appx 680, 681 (4th Cir. 2021) (citing with approval cases holding that 25,000 and 11,000 jobs nationally qualified as significant job numbers); <u>Hicks v. Califano</u>, 600 F.2d 1048, 1051 (4th Cir. 1979) ("We do not think that the approximately 110 jobs [available regionally] testified to by the [VE] constitute an insignificant number.").

plaintiff's] attempts to now challenge the [VE's] testimony and the ALJ's findings and point out possible conflicts when none was raised during the proceeding."); Meyerink v. Colvin, No. 2:13CV327, 2015 WL 773041, at *14 (N.D. Ind. Feb. 24, 2015) (unpublished) ("[The p]laintiff [] contends that the VE's testimony is [] undermined by an internal inconsistency. He points out that the VE testified that there would be a twenty-five percent reduction in the number of jobs to accommodate a sit/stand option. The VE then stated that there would be 1,500 small parts assembler jobs with a sit/stand option, which was an increase, rather than a reduction, from the original number of 1,000 sedentary small parts assembly jobs. An ALJ's reliance on imperfect VE testimony does not warrant remand if, as here, a claimant does not question the basis for the testimony at the time of the hearing."); Bunton v. Colvin, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) (unpublished) (finding waiver of issue on judicial review where the plaintiff "failed to mount any opposition . . . to the view that he retained the capacity to do the [jobs proffered by the VE], despite . . . the opportunity . . . to question the VE about . . . those positions"), recommendation adopted, slip op. (M.D.N.C. Mar. 10, 2014) (Schroeder, J); Adams v. Astrue, No. CIV 08-135, 2009 WL 774845, at *7 n.13 (W.D. La. Mar. 24, 2009) (unpublished) (noting that, "if [the] plaintiff harbored any doubts concerning the sufficiency of the VE's [testimony], [the plaintiff] was obliged to

12

raise the issue upon cross-examination, rather than saving it as a basis for appeal" (internal quotation marks omitted)).

Even if Plaintiff had not waived his instant challenge to the ALJ's interaction limitations, that challenge fails on its merits. As the Commissioner argues, "Plaintiff's interpretation of [the ALJ's interaction limitations] mistakenly assumes a workday in which Plaintiff would be constantly interacting with supervisors, coworkers, and the public throughout his entire shift – that is, he would never not be interacting with someone[, but, i]n reality, . . . many jobs entail at least some non-interactive time." (Docket Entry 12 at 6.)  The Court agrees that "[t]he more plausible reading of 'respond appropriately' is that it states the obvious – interacting with others at work on a sustained bas[i]s necessarily entails responding appropriately to them," and, thus, the ALJ's finding at step three of the SEP that "Plaintiff[ had] moderate limitation in interacting with others (which includes responding appropriately) requires him to have time during the workday whe[n] he is not interacting." (Id. (referencing Tr. 18).)

Moreover, Plaintiff fails to cite (and the undersigned's research has not identified) any authority supporting Plaintiff's interpretation. (See Docket Entries 8, 13.)  Indeed, this Court recently interpreted a similar interaction limitation in a manner consistent with the Commissioner's interpretation:

> [T]he ALJ found in the RFC that [the p]laintiff retained the ability to <u>respond appropriately</u> to supervisors if

13

> there is no more than occasional interaction. In other
> words, the ALJ found that [the p]laintiff <u>can</u> respond
> appropriately to supervision in work settings where
> interaction with supervisors occurs <u>only occasionally</u>.
> That finding coheres with the state agency psychological
> consultants' opinion that [the p]laintiff had moderate
> (not marked) limitation in her ability to accept
> instructions and respond appropriately to criticism from
> supervisors and therefore needed a job with a low level
> of interpersonal demands, as well as with the ALJ's
> finding that [the p]laintiff had moderate (not marked)
> limitation in social interaction at step three of the
> SEP.

<u>Angela T. v. Kijakazi</u>, No. 1:22CV842, 2023 WL 6690879, at *6 (M.D.N.C. Oct. 12, 2023) (unpublished) (first emphasis added, remaining emphasis in original) (internal quotation marks and parenthetical citations omitted). Similarly, here, the ALJ's interaction limitations harmonize with the state agency psychological consultant's opinion (which the ALJ found "persuasive" (Tr. 30-31)) that Plaintiff had moderate (not marked) limitation in his ability to accept instructions and respond appropriately to criticism from supervisors (<u>see</u> Tr. 139) and "would do best in settings with minimal social demands" (<u>id.</u>), as well as the ALJ's step three finding that Plaintiff had moderate (not marked) limitation in interacting with others (<u>see</u> Tr. 18).

Furthermore, although not addressing the precise issue before the Court, other courts have found that temporal limits, i.e., frequently or occasionally, on the ability to respond appropriately to others do not result in work-preclusive interaction limitations. <u>See</u> <u>Kukuloff v. Berryhill</u>, No. 3:17CV4624, 2018 WL 6238100, at *3,

14 (S.D.W. Va. Nov. 7, 2018) (unpublished) (holding that ALJ's RFC finding that the plaintiff "can frequently <u>respond appropriately</u> to supervisors and co-workers" and "occasionally <u>respond appropriately</u> to the public" did not equate to finding of "substantial loss of ability to perform . . . the basic work activit[y of responding appropriately to supervision, co-workers and usual work situations]" (emphasis added)), <u>recommendation adopted</u>, 2018 WL 6204453 (S.D.W. Va. Nov. 28, 2018) (unpublished); <u>Donathan v. Berryhill</u>, No. 1:17CV821, 2018 WL 3014828, at *4 (M.D.N.C. June 15, 2018) (unpublished) (rejecting the plaintiff's argument that "[o]nly being able to occasionally <u>respond appropriately</u> to coworkers and the public constitutes a 'substantial loss' of the ability to meet this basic work demand" (emphasis added)), <u>recommendation adopted</u>, 2018 WL 4565936 (M.D.N.C. July 3, 2018) (unpublished).

**b.    Violation of <u>Mascio</u>**

Plaintiff next maintains that "the ALJ's RFC does nothing to address the qualitative nature of social interactions [Plaintiff] could perform, and therefore appears to contradict *Mascio*. (Docket Entry 8 at 12 (citing Tr. 18-19, and <u>Mascio</u>, 780 F.3d at 638); <u>see also</u> Docket Entry 13 at 4-6.) In Plaintiff's view, "[t]he Paragraph B criteria for social interaction evaluates an individual['s] ability to 'relate to and work with' others in the workplace," and, thus, "[o]n its face, the Paragraph B assessment

15

looks at the qualitative ability of an employee to interact with co-workers, supervisors, and the public – not necessarily how long they can interact with each group." (Docket Entry 8 at 12 (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E.2).) Plaintiff points out that "the RFC's social restriction only limits the temporal aspects of [Plaintiff]'s ability to interact with supervisors, co-workers, and the public[,] . . . [and] does nothing to describe what types of interactions [Plaintiff] can have with individuals encountered in the workplace (i.e., must the interactions be non-confrontational, incidental, casual, not a core component of the job, or some other limitation?)." (Id. (citing Tr. 18-19).) According to Plaintiff, "[a]t its core, the Fourth Circuit's *Mascio* ruling stands for the proposition that an ALJ's explanation of impairment severity at [s]tep [t]wo or [t]hree does not explain the absence of corresponding functional limitations in the RFC at [s]teps [f]our and [f]ive." (Docket Entry 13 at 5 (citing Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019), and Panna v. Colvin, No. 1:14CV229, 2015 WL 5714403, at *3 (W.D.N.C. Aug. 31, 2015) (unpublished), recommendation adopted, 2015 WL 5725246 (W.D.N.C. Sept. 29, 2015) (unpublished)).) Plaintiff's above-described arguments miss the mark.

The Fourth Circuit, in finding that an ALJ failed to account in the RFC for the claimant's moderate limitation in concentration, persistence, or pace ("CPP"), held in Mascio that "the ability to

16

perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." <u>Mascio</u>, 780 F.3d at 638. However, as a neighboring district court has explained:

> <u>Mascio</u> does not broadly dictate that a claimant's moderate impairment in [CPP] <u>always</u> translates into a limitation in the RFC. Rather, <u>Mascio</u> underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .

<u>Jones v. Colvin</u>, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); <u>see also</u> <u>Mascio</u>, 780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]." (emphasis added)).

Furthermore, it remains unclear whether <u>Mascio</u> applies to moderate limitations in broad functional areas other than CPP. Although some decisions have remanded under <u>Mascio</u> for an ALJ's failure to adequately account for moderate limitations in social interaction, <u>see, e.g.,</u> <u>Dennis</u>, 362 F. Supp. 3d at 309 (extending <u>Mascio</u> to moderate limitation in social functioning); <u>Fauber v. Colvin</u>, No. 6:15CV16, 2016 WL 8736904, at *5 (W.D. Va. Aug. 12, 2016) (unpublished) (applying <u>Mascio</u> to claim that ALJ failed to account in RFC for moderate limitation in social functioning); <u>Shryock v. Commissioner</u>, Civ. No. 15-1136, 2016 WL 245531, at *2 n.3 (D. Md. Jan. 21, 2016) (unpublished) ("I further note that the

17

ALJ also found a moderate limitation in the area of social functioning, but imposed no corresponding limitation in the RFC assessment. Because this appears to be a *Mascio*-like error in a different functional area, the ALJ should further address this issue on remand."), cases exist to the contrary, see Parker v. Kijakazi, No. 9:22CV1041, 2023 WL 3020712, at *12 & n.14 (D.S.C. Jan. 6, 2023) (unpublished) (noting that "the Fourth Circuit has not extended *Mascio*'s reasoning to the categor[y] of interacting with others," as well as that "even those courts which have extended the reach of *Mascio* [to moderate limitation in social interaction] have held that it is not required that a corresponding RFC restriction specifically address interactions with each category of individuals — coworkers, supervisors, and the public[, and] . . . have fallen back on the overarching requirement that an ALJ must provide a narrative discussion that builds an accurate and logical bridge from the evidence to their conclusion." (internal citations and quotation marks omitted)), recommendation adopted, 2023 WL 2180069 (D.S.C. Feb. 23, 2023) (unpublished); Lemon v. Kijakazi, No. 4:20CV2310, 2021 WL 3661151, at *8 (D.S.C. Aug. 18, 2021) (unpublished) ("[N]o Fourth Circuit Court of Appeals decision has extended *Mascio*'s reasoning to moderate limitations in interacting with others. There is no conversion rule/required accommodation in the RFC when a moderate social limitation is found at an earlier step; the normal RFC regulations still apply — that

18

the ALJ must support the RFC findings with substantial evidence." (internal quotation marks omitted)); <u>Long v. Saul</u>, No. 6:20CV3345, 2021 WL 6841702, at *5 (D.S.C. July 9, 2021) (unpublished) ("*Mascio* addressed the necessary explanation required when an ALJ finds moderate limitations in the domain of [CPP], not in the domain of interacting with others.  Indeed, the plaintiff has referenced no binding case law holding that an ALJ must address limitations in the domain of interacting with others by explaining the limitation with respect to the public, co-workers, and supervisors.  Instead, the persuasive authority cited by the plaintiff notes that an ALJ must explain evidentiary conflicts – not that such limitations are required." (citing <u>Dennis</u>)), <u>recommendation adopted sub nom.</u> <u>Scott L. v. Kijakazi</u>, No. 6:20CV3345, 2022 WL 214523 (D.S.C. Jan. 25, 2022) (unpublished); <u>Guest v. Colvin</u>, No. 1:15CV776, 2016 WL 4007612, at *6 (M.D.N.C. July 26, 2016) (unpublished) (expressing "doubt [] as to whether <u>Mascio</u>'s holding with regards to [CPP] should apply to" a case involving limitations in social functioning, "particularly given that the Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the ability to stay on task, and such a distinction does not clearly apply in the social functioning context" (internal citation omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 24, 2016) (Schroeder, J.).  Moreover, even assuming <u>Mascio</u> applies to functional areas other than CPP, for the

19

following three reasons, Plaintiff has not shown that the ALJ failed to adequately account in the RFC for Plaintiff's moderate limitation in social interaction.

First, the ALJ included in the RFC the limitations of frequent interaction with supervisors and occasional interaction with coworkers and the public (see Tr. 19) to account for Plaintiff's moderate limitation in interaction (see Tr. 18), and Plaintiff does not suggest what specific, additional limitations the ALJ should have included in the mental RFC (see Docket Entries 8, 13). That failure precludes relief. See Carol H. v. Kijakazi, No. 5:20CV35, 2021 WL 3561241, at *13 (W.D. Va. Aug. 12, 2021) (unpublished) (rejecting the plaintiff's argument that ALJ failed to account for mental limitations in RFC, where the plaintiff "did not explain what functional limitations [the] ALJ [] should have included in the RFC or discuss why any mental limitations were warranted in light of the record as a whole").

Plaintiff has argued that, "[o]n its face, the Paragraph B assessment looks at the qualitative ability of an employee to interact with co-workers, supervisors, and the public – not necessarily how long they can interact with each group" (Docket Entry 8 at 12 (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00E.2)), and, thus, that the ALJ erred by failing to include "qualitative" limitations on interaction in the RFC "(i.e., must the interactions be non-confrontational, incidental, casual, not a

20

core component of the job, or some other limitation?).” However, another judge of this Court recently (and persuasively) rejected that same argument, see Sandra G. v. O'Malley, No. 1:23CV6, 2024 WL 1119550, at *7 (M.D.N.C. Mar. 14, 2024) (unpublished) (Peake, M.J.) (“Notably, [the p]laintiff points to no case law or regulatory guidance adopting this interpretation of the Paragraph B criteria. She also fails to explain how such an interpretation, if it existed, could be defined or encompassed by the [DOT], companion publications, or [VE] knowledge.”).

Second, the ALJ's discussion of the medical evidence of record cites to substantial evidence to support the lack of additional interaction restrictions in the RFC. The ALJ discussed the following, pertinent evidence:

- “[Plaintiff]'s treatment records document few, if any complaints by him of any suicidal ideation during the relevant period since his alleged disability onset date, [] document no visits by him to any psychiatrists or other mental health specialists[, and] show that [he] has [not] required any inpatient psychiatric treatment during this period[, which] . . . strongly suggests that his impairments have not caused more than mild to moderate symptoms and limitations” (Tr. 25 (emphasis added));

- “records show that [Plaintiff]'s symptoms have responded fairly well to his medications” (id.);

- consultative psychological examiner Dr. Gregory Villarosa “observed [Plaintiff] to seem cooperative, with a neat and clean appearance, normal eye contact, clear, logical and goal-directed speech, [] fair social skills, [and] . . . relatively intact social judgment” (id.);

21

- consultative psychological examiner Dr. Stephen Sanders noted that Plaintiff "seem[ed] calm, pleasant and cooperative, with an appropriate affect" (Tr. 26);

- "[Plaintiff]'s primary care provider has, throughout the relevant period since [Plaintiff's] alleged disability onset date, fairly consistently observed him to exhibit an appropriate mood and affect, and repeatedly observed him to seem alert, oriented, and cooperative, with appropriate insight and/or judgment" (id.);

- consultative psychological examiner Dr. Elizabeth Shaw "observed [Plaintiff] to seem pleasant and cooperative, noting that he interacted appropriately, observed him to seem appropriately dressed, with adequate grooming and hygiene, and observed him to exhibit fair eye contact, with clear and normal speech, and average social judgment" (id.);

- "during the aforementioned evaluation by Dr. Shaw[,] . . . [Plaintiff] denied having any significant problems conforming to social standards, complying with rules, or cooperating with authority figures" (id.).

The ALJ's citation of the above-quoted evidence clarifies why, notwithstanding finding Plaintiff moderately limited in interacting with others, the ALJ did not include greater (or "qualitative") interaction limitations in the RFC.

Third, as discussed above, two of the three jobs cited by the VE (and adopted by the ALJ at step five of the SEP (see Tr. 35)) have DOT codes containing a fifth digit of 8. (See Tr. 72 (citing DOT, No. 361.6**8**5-018 ("Laundry Worker II"), 1991 WL 672987; DOT, No. 381.6**8**7-034 ("Waxer, Floor"), 1991 WL 673262)), representing the lowest level of human interaction in the labor market, see

22

<u>Fletcher v. Colvin</u>, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 28, 2016) (Osteen, Jr., C.J.).  Although the remaining job, food service worker, does not contain a fifth digit of "8," <u>see</u> <u>DOT</u>, No. 319.6**7**7-014 ("Food-Service Worker, Hospital"), 1991 WL 672771, the VE testified that 50,000 laundry worker jobs and 70,000 floor waxer jobs existed in the national economy (<u>see</u> Tr. 72), which constitute significant job numbers under Fourth Circuit precedent, <u>see</u> <u>McCall v. Saul</u>, 844 Fed. Appx 680, 681 (4th Cir. 2021) (citing with approval cases holding that 25,000 and 11,000 jobs nationally qualified as significant job numbers); <u>Hicks v. Califano</u>, 600 F.2d 1048, 1051 (4th Cir. 1979) ("We do not think that the approximately 110 jobs [available regionally] testified to by the [VE] constitute an insignificant number.").  Moreover, the <u>DOT</u> listings for the laundry worker and floor waxer jobs rate the activity of "Taking Instructions – Helping" as "Not Significant" and reflect the tasks of "Talking" and "Hearing" as "Not Present - Activity or condition does not exist."  <u>DOT</u>, No. 361.6**8**5-018 ("Laundry Worker II"), 1991 WL 672987; <u>DOT</u>, No. 381.6**8**7-034 ("Waxer, Floor"), 1991 WL 673262.

Consequently, the record does not support a finding that remand for the ALJ to include greater (or "qualitative") interaction limitations in the RFC would result in a different outcome in his case.  See <u>Ridley G. v. Commissioner of Soc. Sec.</u>,

23

No. 1:20CV773, 2021 WL 4307507, at *8, *13 (N.D.N.Y. Sept. 22, 2021) (unpublished) (deciding that RFC restriction to no interaction or tandem tasks with coworkers harmonizes with jobs with DOT level 8 interaction); Scott C. v. Commissioner of Soc. Sec., No. 2:20CV109, 2021 WL 2682276, at *4-5 (D. Vt. June 30, 2021) (unpublished) ("'[L]evel 8 interaction [in the DOT] is compatible with an RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public.'" (quoting Alie v. Berryhill, 4:16CV1352, 2017 WL 2572287, at *16 (E.D. Mo. June 14, 2017) (unpublished)) (emphasis added)); Wilson v. Saul, No. 1:19CV1089, 2020 WL 6293132, at *4 (M.D.N.C. Oct. 27, 2020) (unpublished) (Webster, M.J.) ("[E]ven assuming the ALJ erred here by failing to include additional social limitations in the RFC . . ., any error would be harmless because the jobs the ALJ concluded that [the p]laintiff could perform do not require significant social interactions. In fact, the [DOT's] descriptions of the jobs identified by the VE list interaction with "People" as being "Not Significant."), recommendation adopted, slip op. (M.D.N.C. Nov. 24, 2020) (Biggs, J.); Eldridge v. Berryhill, No. CV 16-5289, 2018 WL 1092025, at *2 (W.D. Ark. Feb. 28, 2018) (unpublished) (finding jobs categorized by DOT as involving level 8 interaction consistent with restrictions to "limited contact with the general public" and "incidental contact with co-workers" (emphasis added)); Shorey v. Astrue, No. 1:11CV414, 2012 WL

24

3475790, at *6 (D. Me. July 13, 2012) (unpublished) (holding that "inclusion of a limitation to <u>occasional</u>, <u>brief</u>, and <u>superficial</u> contact with coworkers and supervisors in the [ALJ]'s hypothetical question would not have excluded" jobs with a <u>DOT</u> "People" rating of 8), <u>recommendation adopted</u>, 2012 WL 3477707 (D. Me. Aug. 14, 2012) (unpublished); <u>Flaherty v. Halter</u>, 182 F. Supp. 2d 824, 851 (D. Minn. 2001) (finding jobs with "not significant" levels of social interaction under the <u>DOT</u> compatible with ALJ's limitation to "<u>brief</u> <u>superficial</u> type of contact with co-workers and supervisors and members of the public" (emphasis added)).

In light of the foregoing analysis, Plaintiff's first issue on review fails as a matter of law.

## 2. Limitation to Very Short and Simple Instructions

Plaintiff's second and final issue on review asserts that "[t]he ALJ erred by failing to resolve the conflict created by finding Dr. Souther's opinion 'persuasive' but failing to adopt, or explain the basis for not adopting, her opinion that [Plaintiff] would be limited to 'understanding and remembering very short and simple instructions.'" (Docket Entry 8 at 12-13 (quoting Tr. 30-31, 138) (bold font and block formatting omitted); <u>see also</u> Docket Entry 13 at 6-8.) In Plaintiff's view, "[t]his failure to explain the RFC's variance from Dr. Souther's 'persuasive' opinion prevents the ALJ's decision from being supported by substantial evidence." (Docket Entry 8 at 16; <u>see also</u> <u>id.</u> (quoting <u>Thomas v. Berryhill</u>,

25

916 F.3d 307, 311 (4th Cir. 2019), for proposition that "meaningful review here is frustrated because the ALJ failed 'to provide a logical explanation of how he weighed the record evidence and arrived at his RFC findings'" (brackets omitted), and Patterson v. Commissioner of Soc. Sec. Admin., 846 F.3d 656, 662-63 (4th Cir. 2017), for proposition that "[t]he ALJ did not 'address conflicting evidence, or explain away contrary findings of other doctors in a comprehensive manner' meaning 'the ALJ's lack of explanation requires remand'" (brackets omitted)); id. at 17 (contending that "the ALJ's failure to explain the RFC's variance from an opinion found 'persuasive' also violated [Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ('SSR 96-8p')]," and Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p")).)  Plaintiff further likens this case to Chambless v. Saul, No. 1:19CV322, 2020 WL 5577883 (W.D.N.C. Sept. 17, 2020) (unpublished), in which "the ALJ assigned 'great weight' to the opinion of a doctor, who had concluded that the [p]laintiff was limited to performing 'short simple instructions,'" but "the ALJ's RFC limited the [p]laintiff to 'simple routine tasks and instructions,'" prompting the court to order remand, finding "'[t]here [wa]s no explanation at all as to how the ALJ progressed from "short simple instructions" and "one to

two step instructions" to the higher reasoning level of "*simple* instructions."'" (Docket Entry 8 at 17 (quoting <u>Chambless</u>, 2020 WL 5577883, at *4-5).)

According to Plaintiff, "[t]he ALJ's failure to adopt, or explain the basis for not adopting, Dr. Souther's opined limitation to 'very short and simple instructions' harms [Plaintiff] because such a limitation would apparently preclude performance of the [R]easoning [Development L]evel 2 [('RDL2')] occupation of laundry worker." (<u>Id.</u> at 18 (citing <u>DOT</u>, No. 361.685-018 ("Laundry Worker II"), 1991 WL 672987, and <u>Thomas</u>, 915 F.3d at 313, for proposition that "a limitation to 'short, simple instructions' represents an apparent conflict with the [<u>DOT</u>] definition for [RDL2], which requires an individual to carry out 'detailed but uninvolved . . . instructions'").) Plaintiff additionally points out that "[t]he [RDL3] occupation of food service worker contains apparent conflicts with the ALJ's RFC as written, given [SSA] policy that a limitation to 'simple' or 'repetitive' tasks represents an apparent conflict with [RDL3] occupations." (<u>Id.</u> at 19 (citing SSA, *Vocational Expert Handbook* 39-40 (Mar. 2023), available at https://www.ssa.gov/appeals/public_experts/ Vocational_Experts_(VE)_Handbook-508.pdf).) Plaintiff thus argues that, "had the ALJ adopted Dr. Souther's opined limitation to 'very short and simple instructions,' the only job without an apparent reasoning-level-based conflict would be that of floor waxer" (<u>id.</u>

27

(citing Tr. 35)), and "it is unknown whether the ALJ would have found only the number of floor waxer jobs (70,000) to represent a significant number, a factual finding appropriately made on remand." (Id. (citing Viverette v. Commissioner of Soc. Sec., 13 F.4th 1309, 1318-19 (11th Cir. 2021), Grech v. Kijakazi, No. 8:20CV1254, 2022 WL 485111, at *6 (M.D. Fla. Feb. 17, 2022) (unpublished), and Cisneros v. Commissioner of Soc. Sec., No. 2:20CV873, 2022 WL 354717, at *3-4 (M.D. Fla. Feb. 7, 2022) (unpublished)).) As explained in the following analysis, Plaintiff's arguments fail to establish prejudicial error by the ALJ.

Plaintiff's arguments proceed from a faulty premise, i.e., that Dr. Souther "limited" Plaintiff to "'very short and simple instructions.'" (Docket Entry 13 at 7 (emphasis added) (quoting Tr. 138); see also Docket Entry 8 at 18 (contending that "the ALJ here failed to explain how [he] progressed from Dr. Souther's opined more restrictive limitation to 'very short and simple instructions' to the ALJ's less restrictive limitation to 'simple, routine and repetitive tasks [("SRRTs")]'" (emphasis added)).) In the portion of the mental RFC evaluation tasking Dr. Souther with assessing Plaintiff's "[u]nderstanding and [m]emory [l]imitations," Dr. Souther deemed Plaintiff "[n]ot [s]ignificantly [l]imited" in his ability to understand and remember very short and simple instructions" and "[m]oderately [l]imited" in his ability to

28

understand and remember detailed instructions." (Tr. 138 (emphasis added).) Significantly, Dr. Souther's "[m]oderately [l]imited" finding "means that [Plaintiff's] ability to handle detailed instructions '[wa]s impaired,' Program Operations Manual System ('POMS'), § DI 24510.063B.2 (bold font omitted), but not that []he entirely lacked that capacity." <u>Burton v. Saul</u>, No. 1:19CV698, 2020 WL 3415641, at *7 (M.D.N.C. June 22, 2020) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 9, 2020) (Osteen, J.); <u>see also</u> POMS § DI 24510.063B.3 (defining finding of "[m]arkedly [l]imited" as "support[ing] the conclusion that the individual cannot usefully perform or sustain the activity" (emphasis added)). Consistent with the fact that Dr. Souther did <u>not</u> find Plaintiff "[m]arkedly [l]imited" in his ability to understand and remember detailed instructions (<u>see</u> Tr. 138), Dr. Souther ultimately concluded that Plaintiff remained "capable of performing SRRTs in a stable work setting with minimal social demands" (Tr. 139), thus making clear that Dr. Souther's earlier statement about Plaintiff's <u>capability</u> to understand and remember very short and simple instructions did not constitute a <u>limitation</u> to very short and simple instructions. As the ALJ's RFC similarly limited Plaintiff to SRRTs, simple work-related decisions, frequent interaction with supervisors, and occasional interaction with coworkers and the public (<u>see</u> Tr. 19), Plaintiff has not shown that the ALJ failed to account for Dr. Souther's opinions in the RFC,

see Burton, 2020 WL 3415641, at *7 (despite state agency psychological consultants each finding that the plaintiff could "understand and remember short and simple instructions" in the narrative portion of the "understanding and memory" section of the mental RFC evaluation, the court found that, "[u]ltimately, and consistently with the POMS' definition of 'moderately limited,' the consultants did not include a restriction to short instructions in [the p]laintiff's mental RFC, finding instead that she remained able to handle [SRRTs]," as well as that, "[i]n the ALJ's decision, he likewise found that [the p]laintiff could perform SRRTs and thus no inconsistency exist[ed] between the ALJ's assignment of 'substantial weight' to the consultants' opinions and the mental RFC." (emphasis added)).

A neighboring district court rejected an argument similar to Plaintiff's instant contentions with the following, persuasive reasoning:

> After closely reviewing the record, the court finds that the ALJ's RFC finding does not conflict with his giving great weight to the [s]tate agency [psychological consultants'] opinions. Indeed, the ALJ explicitly noted that the [s]tate agency consultants concluded that [the] plaintiff "is able to understand and remember very short and simple instructions" and "carry out short and simple instructions." However, the ALJ also noted that this was simply support for their overall final opinion that [the] plaintiff "is capable of performing [SRRTs] in a low stress work setting." In reviewing these opinions and adopting them, the ALJ has accounted for their opinions in a manner consistent with his RFC finding, as the agency consultants' opinion that [the] plaintiff "is capable of performing [SRRTs] in a low stress work setting" is entirely consistent with the ALJ's ultimate

30

finding that [the] plaintiff is "limited to [SRRTs] in a stable work environment at a nonproduction pace." Such limitation also does not conflict with the agency consultants' notes on [the] plaintiff's ability related to short and simple instructions, as <u>the agency consultants themselves clearly believe that [SRRTs] are inclusive of very short and simple instructions</u>.

<u>Anthony v. Berryhill</u>, No. 3:17CV92, 2018 WL 1567354, at *2 (W.D.N.C. Mar. 30, 2018) (unpublished) (emphasis added).[8]

Plaintiff attempts to distinguish <u>Anthony</u> by arguing that the ALJ in that case expressly noted that the state agency psychological consultants' statement that the claimant could understand and remember very short and simple instructions "'was simply support for their overall final opinion that the plaintiff "[wa]s capable of performing [SRRTs] in a low stress work setting."'" (Docket Entry 13 at 7 (quoting <u>Anthony</u>, 2020 WL 3415641, at *7).) As the Commissioner points out, however, the ALJ here explicitly noted in the RFC that Plaintiff's "'ability to understand, remember and carry out instructions can be accommodated by the performance of [SRRTs].'" (Docket Entry 12 at 12-13 (quoting Tr. 18-19).)

_____

[8] Although another judge in the same court later held to the contrary, <u>see</u> <u>Chambless</u>, 2020 WL 5577883, at *4-5 (finding that ALJ reversibly erred by according great weight to state agency psychological consultant's opinions, which included both that the plaintiff could understand and follow short simple instructions and could perform SRRTs, but not including limitation to short instructions in RFC), the undersigned finds the reasoning of <u>Anthony</u> more persuasive. In any event, the <u>Chambless</u> court found prejudicial error, because the <u>DOT</u> rated all three of the jobs relied upon by the ALJ at either RDL2 or 3, <u>see id.</u> at *5, whereas here, as discussed in more detail <u>supra</u>, the <u>DOT</u> categorizes the floor waxer job as RDL1, <u>see DOT</u>, No. 381.687-034 ("Waxer, Floor"), 1991 WL 673262, and the VE testified that 70,000 floor waxer jobs existed nationally (<u>see</u> Tr. 72), a significant number under Fourth Circuit precedent, <u>see McCall</u>, 844 Fed. Appx at 681; <u>Hicks</u>, 600 F.2d at 1051.

Alternatively, assuming, _arguendo_, that the ALJ erred by failing to incorporate into the RFC Dr. Souther's opinion that Plaintiff remained capable of understanding and remembering very short and simple instructions, that error qualifies as harmless under the circumstances presented here. _See generally_ _Fisher v. Bowen_, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion [by an ALJ] unless there is reason to believe that the remand might lead to a different result"). Even if an RFC limitation to "very short and simple instructions" would preclude Plaintiff from performing two of the three jobs cited by the VE (_see_ Tr. 72) and adopted by the ALJ at step five of the SEP (_see_ Tr. 35) because the _DOT_ rates those jobs at RDL2 and RDL3, respectively, _see_ _DOT_, No. 361.685-018 ("Laundry Worker II"), 1991 WL 672987; _DOT_, No. 319.677-014 ("Food-Service Worker, Hospital"), 1991 WL 672771; _see also_ _Thomas_, 916 F.3d at 314 (deeming apparent conflict to exist between restriction to short, simple instructions and RDL2), the _DOT_ categorizes the remaining job of floor waxer at RDL1, _see_ _DOT_, No. 381.687-034 ("Waxer, Floor"), 1991 WL 673262. The _DOT_ defines RDL1 as requiring a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," _DOT_, App'x C ("Components of the Definition Trailer), § III (General Educational Development), 1991 WL 688702, and Plaintiff has conceded that an

32

RFC limitation to "very short and simple instructions" would <u>not</u> conflict with the floor waxer job's RDL1 rating (<u>see</u> Docket Entry 8 at 19).

Moreover, the VE testified that 70,000 floor waxer jobs existed in the national economy (<u>see</u> Tr. 72), which constitutes a significant number of jobs under Fourth Circuit precedent, <u>see</u> <u>McCall</u>, 844 Fed. Appx at 681; <u>Hicks</u>, 600 F.2d at 1051. See <u>Baxley v. Commissioner of Soc. Sec. Admin.</u>, No. 3:22CV654, 2024 WL 69963, at *2 (W.D.N.C. Jan. 4, 2024) (unpublished) ("[E]ven assuming that the ALJ should have limited [the p]laintiff's RFC to 'very short and simple instructions,' doing so would have not created a conflict; [the p]laintiff acknowledges that the inclusion of such a limitation would not conflict with the mental requirements of one of the jobs ('bagger') identified by the ALJ[, and] . . . the ALJ specifically noted that 81,000 bagger jobs existed in the national economy."); <u>Harris v. Saul</u>, No. 1:17CV971, 2020 WL 33130, at *4 (M.D.N.C. Jan. 2, 2020) (unpublished) ("[E]ven if the ALJ failed to resolve an apparent conflict regarding the first two representative occupations, that error was harmless, because the other identified occupation of small parts assembler (with 206,000 jobs nationally) exists in significant numbers."), <u>recommendation adopted</u>, 2020 WL 1429762 (M.D.N.C. Mar. 242, 2020) (unpublished) (Tilley, S.J.); <u>Richardson v. Berryhill</u>, 5:15CV173, 2019 WL 1354042, at *4 (W.D.N.C. March 26, 2019) (unpublished) (holding that, despite

33

conflict between RFC and two jobs cited by VE and adopted by ALJ at step five, because the plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that [the p]laintiff [wa]s not disabled").

Notwithstanding that concession, Plaintiff relies on out-of-Circuit, non-binding authority to argue that "it is unknown whether the ALJ would have found only the number of floor waxer jobs (70,000) to represent a significant number, a factual finding appropriately made on remand." (Id. (citing Viverette, 13 F.4th at 1318-19, Grech, 2022 WL 485111, at *6 and Cisneros, 2022 WL 354717, at *3-4).) That argument fails for two reasons.

First, to date, no district courts in the Fourth Circuit have followed the reasoning in Viverette, and several have persuasively declined to follow it, see Baxley, 2024 WL 69963, at *2 n.2 (declining to follow Viverette where 81,000 jobs in national economy remained appropriate); Armstrong v. Commissioner of Soc. Sec. Admin., No. 3:23CV124, 2024 WL 463311, at *3 (W.D.N.C. Jan. 4, 2024) (unpublished) (distinguishing Viverette where 122,000 jobs remained available to the plaintiff nationally), recommendation adopted sub nom. Armstrong v. O'Malley, 2024 WL 460262 (W.D.N.C. Feb. 5, 2024) (unpublished); Carpenter v. Acting Commissioner of Social Security, No. 5:23CV37, 2023 WL 7726706, at *5, n.3 (W.D.N.C. Nov. 15, 2023) (unpublished) ("In Viverette, the ALJ's error meant that there were only 7,000 jobs available nationally.

34

Courts around the country have generally held that at least 10,000 positions in the national economy is a significant number, and so, it is no surprise that the <u>Viverette</u> court found that the ALJ's finding was not based on substantial evidence. Here, [the p]laintiff would be left with 134,000 jobs in the national economy, a clear distinguishing fact." (internal quotation marks, brackets, and citations omitted)).

Second, unlike in <u>Viverette</u>, the ALJ here expressly "f[ound] that <u>each</u> of [the three jobs cited by the VE and adopted by the ALJ at step five] represents a significant number of jobs existing in the national economy" (Tr. 35 (emphasis added)), thus obviating the <u>Viverette</u> court's concern that the ALJ in that case "apparently treated the three occupations . . . cumulatively for purposes of the 'significant numbers' determination, [and] did not make any findings about how many jobs were available in the national economy for each of the occupations. In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number," <u>Viverette</u>, 13 F.4th at 1318.

Put simply, Plaintiff's second and final assignment of error falls short.

35

## III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.


                                    /s/ L. Patrick Auld
                                    **L. Patrick Auld**
                            **United States Magistrate Judge**

August 7, 2024

36